1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   XANTHI GIONIS,                          No.  2:13-cv-00912-MCE-CKD

12                  Plaintiff,

13         v.                                **MEMORANDUM AND ORDER**

14   CALIFORNIA BUREAU FOR PRIVATE
     POSTSECONDARY EDUCATION, et
15   al.,

16                  Defendants.

17

18         Plaintiff Xanthi Gionis ("Plaintiff") seeks relief from Defendants for claims arising

19   from her term as Provost of Aristotle University and her candidacy for the California

20   State Senate.  Presently before the Court is Defendant Pacific Health Educational[1]

21   Center's ("PHEC") Motion for Sanctions ("Motion") against Plaintiff and Plaintiff's

22   counsel, Keith Oliver ("Oliver") pursuant to Federal Rule of Civil Procedure 11.[2]  Mot.,

23   Oct. 1, 2013, ECF No. 33.  Plaintiff filed an untimely Opposition to the Motion.  Opp'n,

24   Oct. 27, 2013, ECF No. 57.  For the reasons set forth below, the Motion is denied.[3]

25         [1] Erroneously sued as "Pacific Health Education Center."

26         [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
     otherwise noted.
27

28         [3] Because oral argument would not be of material assistance, the Court ordered this matter
     submitted on the briefs.  E.D. Cal. Local R. 230(g).

                                              1

1

2                                      **BACKGROUND**

3

4          According to Plaintiff, in May 2007, the Bureau for Private Postsecondary

5   Vocational Education ("the BPPVE") granted Aristotle University a five-year approval to

6   operate as a postsecondary institution in California.  Then, on June 30, 2007, the

7   BPPVE became a defunct agency and began its two-year sunset period; the Bureau for

8   Private Postsecondary Education ("BPPE") succeeded the BPPVE.  During this two-year

9   period, California was without a regulatory agency in this sector, and postsecondary

10  institutions were without agency guidance or guidelines.  At this same time, the BPPVE

11  offered all approved postsecondary institutions the option of entering into a voluntary

12  agreement to continue operating after the BPPVE disbanded.  Aristotle, an approved

13  institution, was offered this option, and entered into such an agreement with the BPPVE

14  in July 2007.  Thereafter, the California Private Postsecondary Education Act of 2009

15  ("the Act") was enacted, setting forth new regulations for private postsecondary

16  institutions operating in California.  The Act was incorporated into the California

17  Education Code.  The Education Code permitted institutions which had valid approval to

18  operate as of June 30, 2007, to continue to operate "for three calendar years after the

19  expiration date of the approval."  Compl. at 6.  Accordingly, Plaintiff states, Aristotle

20  University had approval to operate until April 2015.

21          Plaintiff was the Provost of Aristotle University at this time, and was also a

22  candidate for the California State Senate seat for the 40th District.  At some point during

23  the BPPVE's sunset period, Aristotle University began offering a Masters of Public

24  Health Program, under the terms of the voluntary agreement.  In January 2013,

25  Defendant Julissa Silva-Garcia, an administrator at the BPPE, contacted Plaintiff and

26  informed Plaintiff that Aristotle University was going to be closed for operating without

27  approval.  According to Plaintiff, the BPPE believed that Aristotle University was not

28  licensed because Defendant Karin Tausan ("Tausan"), allegedly an employee of PHEC,

                                              2

1  tipped off the BPPE.  Plaintiff alleges that Tausan contacted political adversaries and

2  opponents of Plaintiff, along with members of Plaintiff's own political party, to tarnish

3  Plaintiff's reputation and end Plaintiff's political career.  Tausan's actions allegedly forced

4  Plaintiff out of the State Senate race.  According to Plaintiff, PHEC employed Tausan

5  and needed to ensure that Tausan acted "professionally and without harm to other

6  persons and entities in its educational and professional relationships."  Plaintiff also

7  contends that she and the PHEC entered into an agreement "that included the

8  requirement that the parties to the contract make the necessary efforts for the contract to

9  be fully executed."  However, Plaintiff includes no further details regarding the alleged

10  contract.

11       The BPPE failed to investigate Tausan's tip, or the veracity of its content, and

12  instead took actions which were intended to close Aristotle University and harm Plaintiff

13  and her potential political career.

14       On July 18, 2013, Plaintiff filed a verified First Amended Complaint, bringing

15  causes of action against PHEC for unfair business practices, negligence, breach of

16  contract, and intentional infliction of emotional distress, based on PHEC's alleged

17  position as Tausan's employer and PHEC's alleged contract with Plaintiff.  On August

18  13, 2013, PHEC sent a letter to Oliver, detailing the reasons that the lawsuit has no merit

19  as alleged against PHEC—namely, according to PHEC, because Tausan is an

20  independent contract for PHEC, not an employee.  Oliver was provided a copy of the

21  contract between PHEC and Tausan, which reveals the independent contractor nature of

22  their relationship.  Oliver was provided with additional facts, including that Tausan is self-

23  employed; receives no benefits from PHEC; pays all of her own federal, state, and

24  employment taxes; receives a 1099 from PHEC; maintains her own malpractice

25  insurance; is not subject to disciplinary action or performance evaluations; and has

26  control over her work and teaching methods at PHEC.  Mot. at 6.  Tausan also teaches

27  at multiple learning institutions.  Id.

28  ///

1   PHEC offered Oliver more time to review facts with his client and conduct his own

2   independent investigation; however, Oliver ignored this offer.  Then, in compliance with

3   the twenty-one day safe harbor of Rule 11, PHEC served Oliver with a copy of the

4   Motion for Sanctions on September 9, 2013.

5

6                                                   **STANDARD**

7

8          Federal Rule of Civil Procedure 11(b) provides, "By presenting to the court a

9   pleading, written motion, or other paper . . . an attorney or unrepresented party certifies

10  that to the best of the person's knowledge, information, and belief, formed after an

11  inquiry reasonable under the circumstances: (1) it is not being presented for any

12  improper purpose, such as to harass, cause unnecessary delay, or needlessly increase

13  the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted

14  by existing law or by a nonfrivolous argument for extending, modifying, or reversing

15  existing law or for establishing new law; [and] (3) the factual contentions have

16  evidentiary support or, if specifically so identified, will likely have evidentiary support after

17  a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b). "If,

18  after notice and a reasonable opportunity to respond, the court determines that Rule

19  11(b) has been violated, the court may impose an appropriate sanction on any attorney,

20  law firm, or party that violated the rule . . . ." Fed. R. Civ. P. 11(c).

21         The Rule "is designed to deter attorneys and unrepresented parties from violating

22  their certification that any pleading, motion or other paper presented to the court is

23  supported by an objectively reasonable legal and factual basis; no showing of bad faith

24  or subjective intent is required."  Truesdell v. S. Cal. Permanente Med. Grp., 209 F.R.D.

25  169, 173-74 (C.D. Cal. 2002).  Rather, Rule 11 is governed by an objective standard of

26  reasonableness.  See, e.g., Conn v. CSO Borjorquez, 967 F.2d 1418, 1420 (9th Cir.

27  1992).

28  ///

                                                          4

1    Thus, where a party "pursues causes of action for which there is no legal basis

2    whatsoever," sanctions may be warranted.  Bhambra v. True, No. 09–cv–4685–CRB,

3    2010 WL 1758895, at *3 (N.D. Cal. Apr. 30, 2010). Pro se plaintiffs are equally subject to

4    Rule 11's mandates and sanctions as represented parties.  See Warren v. Guelker, 29

5    F.3d 1386, 1390 (9th Cir. 1994).

6    "Under the plain language of the rule, when one party files a motion for sanctions,

7    the court must determine whether any provisions of subdivision (b) have been violated."

8    Id.  If Rule 11(b) was violated, the court "may" impose sanctions.  Id. at 1390.  However,

9    a court cannot simply assert that it "declines to impose sanctions."  Id.

10

11                                            **ANALYSIS**

12

13    PHEC seeks sanctions against Plaintiff and Oliver on the following grounds: (1)

14    Oliver and Plaintiff did not conduct a reasonable inquiry into the facts prior to filing the

15    First Amended Complaint against PHEC; (2) there exists no legal theory or colorable

16    extension of the law in which PHEC would be liable for the acts and injuries alleged by

17    Plaintiff in the First Amended Complaint; and (3) the present suit, as alleged against

18    PHEC, was filed for improper purposes.

19    Plaintiff filed an untimely opposition to the Motion, arguing that the Motion is moot

20    because Plaintiff filed a motion to voluntarily dismiss the Complaint.  Opp'n at 1.  Plaintiff

21    also argues that sanctions are not warranted because "the complaint against PHEC is

22    not frivolous and was brought and maintained in good faith."  Plaintiff also argues that

23    "PHEC is named as a defendant based on extensive discussions with [P]laintiff

24    regarding PHEC's relationship with [P]laintiff's institution, and its relationship with an

25    individual defendant."  Opp'n at 2; Oliver Decl. 2, Oct. 27, 2013, ECF No. 57-1.  Plaintiff

26    provides no additional evidence to support her Opposition.

27    ///

28    ///

1

### A.    Rule 11 Violation

First, the Court rejects Plaintiff's argument that the Motion is moot.  A court retains jurisdiction to impose sanctions pursuant to Rule 11 even if a complaint is voluntarily dismissed.  Soto v. Bank of Am., No. 09-cv-03429-JAM-KJM, 2010 WL 1779892, *2 (E.D. Cal. Apr. 29, 2010) (citing Cooter & Gell v. Hartmarx Corp., 598 U.S. 386 (1990) ("The view more consistent with Rule 11's language and purposes . . . is that district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1).")).

Next, the Court must assess whether Plaintiff violated Rule 11.  Here, the Court must conclude that Plaintiff's action against Defendant PHEC is frivolous.  The Complaint consists of vague allegations against PHEC; the allegation regarding PHEC's contract with Plaintiff is practically indiscernible.  Additionally, the Complaint provides absolutely no facts suggesting that Defendant Tausan's actions were taken in the course of her employment.  PHEC has submitted evidence to the Court showing that Tausan is an independent contractor for PHEC; Plaintiff has submitted absolutely no evidence, even in the form of a declaration by Plaintiff or Oliver, to call that fact into question.  Because PHEC is not Tausan's employer, and otherwise appears to have no connection with the incidents alleged in the Complaint, the Complaint as alleged against PHEC is frivolous.  Even assuming that Oliver had limited time to investigate the facts, PHEC contacted Oliver and offered him additional time to investigate, as made evidence available to him showing that PHEC is not involved in the matters alleged in the Complaint.  Although Oliver states that the Complaint was filed in good faith, Rule 11 does not require a finding of bad faith.  Truesdell, 209 F.R.D. at 173-74.  Rather, as stated above, Rule 11 is governed by an objective standard of reasonableness.  See, e.g., Conn, 967 F.2d at 1420.

Accordingly, the Court finds that the allegations concerning PHEC are frivolous and in violation of Rule 11.

///

**B.    Sanctions**

Rule 11 allows payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.  Fed. R. Civ. P. § 11(c)(4).  Here, PHEC requests sanctions in the amount of $8,618.78, to issue jointly and severally against Plaintiff and Oliver.  However, the Court declines to issue a sanction of attorneys' fees, as PHEC has not provided adequate evidentiary support for the amount of fees requested.

Instead, the Court finds that the appropriate sanction is dismissal of PHEC from this case with prejudice.  Terminating sanctions are therefore imposed against Plaintiff, in favor of PHEC.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1.    PHEC's Motion for Rule 11 Sanctions, ECF No. 33, is GRANTED IN PART;

2.    Terminating sanctions are imposed against Plaintiff; and

3.    Plaintiff's claims against PHEC are hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated:  February 4, 2014

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

7